IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


SANDRA D. TIGGS,

    Plaintiff,

vs.                                    CASE NO. 5:04CV143-SPM/AK

JO ANNE B. BARNHART,
**Commissioner of Social Security**

    Defendant.

_____/


## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

A.     **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on June 20, 2000, alleging a disability onset date of July 20, 2000, because of problems with her knees, back, neck, left hand and arm, high blood pressure and chest pain.  Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on May 22, 2002, and entered an unfavorable decision on July 16, 2002.  The Appeals Council remanded the case to the ALJ (R.70-72), who held another hearing on September 8, 2003.  A second unfavorable decision was rendered on October 24, 2003.  Plaintiff requested review by the Appeals Council, which was denied, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

B.     **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff suffered from several medically determinable impairments: left knee degenerative joint disease, right knee degenerative joint disease, left subacromial bursitis and impingement, high blood pressure controlled on medication, left sided carpal tunnel syndrome, obesity, mild cervical spondylosis, development irregularity of the lumbar spine with rudimentary lowermost ribs and bilateral L5 sacralization, chronic L4-5 disc disease with posterial central bulging with no spinal stenosis or actual disc herniation.  The ALJ found no medically determinable cardiac impairment or headache impairment.  The ALJ further found that Plaintiff did not allege that she was unable to work because of obesity, and likewise no treating source had found her obesity to be disabling.  Similarly, the ALJ noted that no treating source found her knees to be a disabling condition and her range of motion and gait were

**No. 5:04CV143-SPM/AK**

normal without an assistive device.  The ALJ declined to give Dr. Fulmer's report great weight, even though he is Plaintiff's treating source, because Dr. Fulmer found her totally disabled due to neck and back pain based primarily on her subjective complaints. Dr. Fulmer's progress notes contain no clinical testing.  The ALJ did not find Plaintiff's allegations of pain and limitation to be credible in that the record showed she was able to shop more, that she had attended a wedding and wore 2" heels, that she could walk further distances, and if she only sat in a recliner since July 2000, there should be signs of muscle atrophy, which there was not.  The ALJ also found her credibility to be diminished because she failed to seek ongoing medical treatment, did not comply with the physical therapy ordered previously, and her excuse that her husband could not miss work to drive her to her appointments is not believable since she was able to attend all the proceedings related to her disability without a problem. Thus, after considering all the evidence, the ALJ found her able to lift/carry 10 pounds frequently and 20 pounds occasionally with the right upper extremity; able to lift/carry 5 pounds frequently and 10 pounds occasionally with the left upper extremity; able to stand for 6 hours out of an 8 hour day; able to sit 2 hours during an 8 hour day; occasional overhead reaching with the left upper extremity; occasionally balance, stoop, and crouch, but never climb, kneel or crawl, and to avoid concentrated exposure to heights, hazards and heat.  The ALJ gave Plaintiff the benefit of the doubt by finding that she needs to be able to sit/stand at will.  The ALJ based this assessment of her residual functional capacity on the reports of Dr. Naeem and Dr. Holloman-Horton, as well as the

**No. 5:04CV143-SPM/AK**

non-examining state agency physicians. Based on the testimony of a vocational expert, the ALJ found Plaintiff capable of performing her past relevant work as a general office clerk and a transportation scheduler.

### C.     ISSUES PRESENTED

Plaintiff argues that the ALJ failed to consider the combined effects of Plaintiff's severe and non-severe impairments; that the ALJ failed to properly assess her subjective complaints of pain and used his own criteria for evaluating pain, such as watching her at the hearing and observing that she had no muscle atrophy; that the ALJ improperly discredited her reports of pain because she failed to keep physical therapy appointments, which she could not afford; the ALJ failed to fully develop the record by allowing Plaintiff's lay witnesses to testify at the hearing; the ALJ failed to consider her non-exertional impairment, which is pain; the ALJ failed to accord proper weight to Plaintiff's treating physician or her vocational expert; and the ALJ erred in finding that Plaintiff could perform a full range of sedentary work.

The Commissioner responds that substantial evidence supports the decision of the ALJ.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**No. 5:04CV143-SPM/AK**

**D.    STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  <u>Graham v. Apfel</u>, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). <u>Miles v. Chater</u>, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  <u>Wolfe v. Chater</u>, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  <u>See</u> <u>Bridges v. Bowen</u>, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  <u>Barron v. Sullivan</u>, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an

adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him

**No. 5:04CV143-SPM/AK**

from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

**E.     SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

Treatment notes of Dr. Michael Williams show initial treatment for migraines on June 2,1999, with x-ray of the left knee on June 17, 1999, showing mild arthritis, a brain MRI showing possible "empty sella" as a cause for her migraines on June 28, 1999, and a final examination on March 29, 2000, for left shoulder and arm pain treated as carpal tunnel syndrome.  (R. 153-160).

Plaintiff had surgery by Dr. Surgnier on her left knee (July 20, 2000) and right knee (October 24, 2000), because of degenerative joint disease.  (R. 161-168).  Follow-up treatment was to include physical therapy, but she was non-compliant with her treatment.  (R.169-188).  Dr. Surgnier treated Plaintiff for her shoulder bursitis and wrist pain also.  (R. 189-199).  Later nerve studies by Dr. Surgnier found no evidence of carpal tunnel syndrome.  (R. 255).

**No. 5:04CV143-SPM/AK**

Plaintiff's course of treatment at the Southeast Cardiology Clinic resulted in "excellent control" of her blood pressure.  (R. 200-210).  Tests conducted included stress tests, and an EKG, which were normal.  At her latest appointment of March 22, 2001, she reported no complaints and was not scheduled for follow up until one year.  (R. 231).

An MRI of her cervical spine showed "mild cervical spondylosis, but no encroachment on nerve roots...."  (R. 257).  An MRI of the lumbar spine revealed developmental irregularity and chronic disc disease at L4-5 with posterior central bulging, but no disc herniation and no impingement of the nerve roots. (R. 290).

A consultative examination by Dr. Naeem on July 16, 2001, resulted in his finding that she had no major limitations in her daily activities and "should be able to do office-type work, provided her symptoms of headache, left sided carpal tunnel and left shoulder pain are under control."  (R 211-213).

A consultative examination was performed by Dr. Carla Holloman-Horton on July 23, 2003, and she found her to have no real deficits in any areas, with some stiffness in her knees noted.  (R. 285).  Her range of motion tests were normal.  (R. 286).  Dr. Holloman-Horton found Plaintiff capable of lifting over 20 pounds frequently, 20 pounds or less continuously; sitting 8 hours out of an 8 hour day; standing or walking 3 hours out of an eight hour day; with only occasionally bending and squatting, but never crawling or climbing.  (R. 287).  She also assessed Plaintiff as being able to continuously reach, but restricted from working at heights, with mild restrictions to being

around machinery, temperature extremes, dust and fumes, and moderate restrictions in driving. (R. 287). She found that Plaintiff's "marked exogenous obesity" caused many of her limitations.

A RFC prepared by a non-examining physician dated August 13, 2001, found Plaintiff capable of lifting up to 20 pounds occasionally, ten pounds frequently, sitting and standing about six hours out of an 8 hour day, with unlimited pushing and pulling. (R. 214-221). He found her to be limited in her overhead reaching and climbing with occasional limitations in balancing, stooping, kneeling, crouching and crawling. This physician did not have any of the treating source records available to him.

Another RFC by a non-examining physician with treating source records was the same, except it added the environmental restriction to avoid hazards such as machinery and heights. (R. 223-230).

Plaintiff obtained an independent vocational assessment dated May 27, 2003, which found her unable to perform her past relevant work or any work "within the regional or national economy." (R. 281). The examiner had read the medical records of Drs. Fulmer, Surgnier, Maddox, South East Cardiology, and reviewed the MRI scans and EMG studies. (R. 279).

Dr. Fulmer wrote on November 4, 2003, that Plaintiff's prognosis was continued deterioration from her joint disease and obesity, with "intractable" pain, which "will put her in a wheelchair." (R. 290).

**No. 5:04CV143-SPM/AK**

F.   **SUMMARY OF THE ADMINISTRATIVE HEARING (September 8, 2003)**

Plaintiff testified that she was 45 years old at the time of the hearing, was 5'5" tall and weighed 285. (R. 297). She lives with her husband, son and daughter-in-law. (R. 297). She graduated from high school and attended one year of college. (R. 298). Her last day of work was July of 2000. (R. 299). She had worked from 1992 to 2000 as a secretary for the Jackson County Commissioner, when she left to have surgery on her left knee and her sick leave ran out. (R. 300-301). She drew unemployment from November 2000 to May 2001. (R. 301-302). She is unable to work now because of "medical problems with [my] back, neck, left arm, high blood pressure...." (R. 302).

Plaintiff testified that she lifted less than 10 pounds at her job with the county commissioner and she alternated sitting and standing all day. (R. 305-306).

She says her worst pain is in her lower back, which hurts all day at a level 23 on a scale from 0 to 25. (R. 308). Her next worse pain is her left knee which hurts all day at a level 23 on a scale from 0 to 25. (R. 310). Then, her next worse pain is her left arm at a level 22, and her migraines which she has once or twice a week, which she says is a 25. (R. 311). She claims she can walk, sit and stand only about 10 minutes at a time. (R. 312). She does nothing around the house and spends the whole day in a recliner. (R. 314). She states that she does no exercise and that she was not told to continue physical therapy or to continue exercise at home. (R. 315-316). She claims that her doctor did not tell her to walk or do any exercise. (R. 316-317). She admits that she quit going to physical therapy because her husband would have had to take her

and take off work.  (R332). However, she lives with her son and daughter-in-law, who are not working.  (R. 297, 314).

The vocational expert testified that Plaintiff's past relevant work at the commissioner's office was sedentary as she performed it, and that she could return to this former work under the hypotheticals given by the ALJ.  (R. 338-339).

The ALJ presented the following to the expert:

I have six hypotheticals here and all of them are quite off the wall and so there are very moderate changes.  The first hypothetical is a limited form of light work.  The person could lift and carry ten occasionally, I mean ten frequently, 20 occasionally with the right upper extremity, five frequently and ten occasionally with the left upper extremity, All right.  Stand six of two.  No climb, no crawl, and no kneel.  Occasional crouch, and occasional balance, and occasional stoop.  No fumes, exposure to heights or hazards or heat.  Okay.  Occasional overhead reaching with the left upper extremity.  That's the first hypothetical.

The second one is identical to the first except with a sit/stand option.  The third one is the same as the second with a sit/stand option with use of a cane for balance only.  All right.  Okay.  So those three go off the line.  So light, and light, and the light with a sit/stand, and then light with a sit stand.  All right.  The second, the fourth hypothetical is the second major one is sedentary exertional.  With the right upper extremity ten occasionally, ten frequently.  With the left upper extremity five frequently, ten occasionally.  Sit six, stand two.  No climb, no crawl, no kneel, occasional stoop, crouch, and balance, no fumes exposure, heights, hazards, or heat.  Occasional overhead reach with the left upper extremity.  Okay.  The next one is the sedentary like I just said with a sit/stand option.  And the sixth one is a sedentary with a sit/stand option with the use of a cane for balance.  (R. 339-340).

The attorney for Plaintiff asked the expert if there were any jobs which a person could perform if they needed to recline eight hours a day, and the response was "No."

**No. 5:04CV143-SPM/AK**

Page 12 of 18

Also, if Plaintiff had a marked limitation in her ability to concentrate because of drowsiness or dizziness, there would be no jobs. (R. 342). If Plaintiff would not be able to do any typing, most of the general office positions would be eliminated, except as a scheduler. (R. 344). The expert responded that there would be no jobs available to someone who had marked limitations in their ability to concentrate due to dizziness or headaches or nausea or pain. (R. 346-347).

**G.    DISCUSSION**

    a)    Combination of Impairments

The Court has reviewed the entire record and could not find an impairment that Plaintiff alleged, which was not considered by the ALJ. Plaintiff does not identify what impairment was not considered, but argues generally that the ALJ must consider all alleged impairments, both severe and non-severe. A review of the ALJ's decision (R.22-30) shows that he considered all of her alleged impairments, and therefore, this ground for reversal or remand is not well taken.

    b)    Pain Assessment

Plaintiff complains generally that the ALJ did not consider her pain as a non-exertional impairment, and that he improperly used his own criteria for evaluating pain, such as watching her at the hearing and observing that she had no muscle atrophy. Plaintiff also complains that the ALJ improperly discredited her reports of pain because she failed to keep physical therapy appointments, which she could not afford.

**No. 5:04CV143-SPM/AK**

Pain and other subjective symptoms are treated by the regulations as symptoms of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." Accord 20 C.F.R. § 416.929. In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test. Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991). "While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987). Standing alone, however, a claimant's testimony of pain is not conclusive evidence of disability. Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987). If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit and adequate reasons, and these reasons must be

**No. 5:04CV143-SPM/AK**

based on substantial evidence.  <u>Hale v. Bowen</u>, 831 F.2d 1007, 1012 (11th Cir. 1987).  The failure to articulate adequate reasons for discrediting pain testimony mandates that the testimony be accepted as true as a matter of law.  <u>Cannon v. Bowen</u>, 858 F.2d 1541, 1545 (11th Cir. 1988).

The ALJ clearly articulated his reasons for finding Plaintiff's allegations of pain and limitation not credible.  He found that she was considerably more active than she reported and based this finding on physical therapy notes that indicate she was ambulating well, exercising more, wearing 2" heels at a wedding, and shopping.  (R. 169-188).  Plaintiff takes issue with the ALJ's findings on the grounds that he should have questioned her more thoroughly about these activities.  However, the ALJ may rely on evidence in the record, and he may also rely upon his own observations of the claimant at the hearing, which he did.  Plaintiff testified that she had done nothing but lie in a recliner and the ALJ observed that she had no muscle atrophy.  Plaintiff complains that this was an improper "sit and squirm" test, but the Social Security Rulings clearly allow the ALJ to make his own personal observations of the claimant.  SSR 96-7p.

Plaintiff also complains that the ALJ improperly discounted her credibility because she sought infrequent treatment and discontinued her physical therapy.  Plaintiff claims that she could not afford this treatment.  However, Plaintiff did not testify at the hearing that she could not afford treatment, she stated that her husband could not take off work to drive her to these treatments.

**No. 5:04CV143-SPM/AK**

The ALJ also considered the objective clinical tests, two MRI's, as supporting a finding that her condition was not as severe as she alleged.  Neither of the tests showed any significant medical condition and her range of motion tests were essentially normal, with some difficulty noted due to her weight.

      c)     <u>Non-exertional Impairments</u>

Plaintiff argues that her pain and the fact that she needs a cane to walk should have been considered non-exertional impairments.  The ALJ posed to the vocational expert in his hypothetical that Plaintiff may have to use a cane (R. 339), and the expert stated that this would not preclude her past relevant work.  The ALJ explained to Plaintiff's attorney that the expert could not be called upon to assess pain as a factor on her ability to work since he was not a medical doctor, but that if the question was phrased in terms of its affect on a person's ability to maintain concentration it was relevant.  (R. 342-349).  The expert responded that if the person's ability to concentrate was markedly affected by pain, no jobs could be performed, but the ALJ noted in his findings that there was no evidence of marked limitations resulting from pain, dizziness or headaches, and that Plaintiff appeared to be fully alert and responsive throughout the hearing.  (R. 26).  The ALJ need only consider those non-exertional limitations which significantly limit basic work activities.  <u>See</u> <u>Foote v. Chater</u>, 67 F.3d 1553, 1559  (11th Cir. 1995).  In his findings, the ALJ clearly articulated why he did not find any of Plaintiff's asserted non-exertional limitations to significantly limit her ability to work, and

**No. 5:04CV143-SPM/AK**

he had two consultative examinations and two additional RFC's to support his finding. (See R. 26-27).

      d)     <u>Lay Witness Testimony</u>

As the Commissioner notes, lay witnesses were brought to Plaintiff's first hearing, which is not at issue before the Court. There were no lay witnesses present at the second hearing, and therefore, this ground for relief is not well taken.

      e)     <u>Weight Afforded Treating Physician and Vocational Specialist</u>

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. <u>Hillsman v. Bowen</u>, 804 F.2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997); <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583 (11th Cir. 1991), (citing <u>Schnorr v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987)). If an ALJ rejects a treating

physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

Plaintiff argues that Dr. Fulmer's opinion that Plaintiff was disabled should have been afforded considerable weight by the ALJ. However, the ALJ properly articulated his reasons for expressly not accepting this opinion. (See R. 23-25). Dr. Fulmer's opinion was not supported by objective, clinical testing, and was proffered as a future prognosis, not an evaluation of her current status. The ALJ properly relied upon the testing performed by the consultative examiners, rather than Dr. Fulmer's conclusory opinion.

Further, Plaintiff has provided no authority which holds that the opinion of an independent vocational counselor should be afforded any particular weight. The ALJ relied upon the reports of the consultative examiners, as well as non-examining physicians to support his residual functional capacity assessment, which supported his ultimate finding that she could perform her past relevant work and was not disabled.

f) <u>Full Range of Sedentary Work</u>

The Commissioner responds that the ALJ did not find that Plaintiff could perform a full range of sedentary work, rather he posed hypotheticals to the vocational expert that included limitations on the left upper extremity, a sit/stand option, and use of a

**No. 5:04CV143-SPM/AK**

cane. Even with these variables, the expert found Plaintiff capable of performing her past relevant work. There is no merit to this ground either.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

**At Gainesville, Florida, this 5<u>TH</u> day of August, 2005.**

                                             **s/ A. KORNBLUM**
                                             **ALLAN KORNBLUM**
                                             **UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 5:04CV143-SPM/AK**